THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, Interpleader-Plaintiff, *v.* CORA MARTIN WATSON *et al.*, Defendants-Appellees.—(RUTH V. MARTIN, Defendant-Appellant.)

First District (1st Division)   No. 78-1320

Opinion filed May 14, 1979.

William Parker Ward, of Chicago, for appellant.

Robert L. Tucker and Yvonne N. Bryant, both of Tucker & Watson, of Chicago, for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

This interpleader action was brought by Lincoln National Life

Insurance Company to determine the rights of rival claimants to the proceeds of an insurance policy on the life of William Martin, Jr., deceased. Motions for summary judgment were filed by Ruth V. Martin, surviving widow of the deceased, and also by Cora Martin Watson, the divorced first wife of deceased and Craig Martin, son of Mrs. Watson and deceased. Craig Martin is also the assignee of all rights of his mother, Cora Martin Watson, to said fund. The trial court directed payment to be made to Craig Martin, the son of the deceased. The surviving widow, Ruth V. Martin, appeals.

Lincoln National Life Insurance Company issued a group life insurance policy which included and covered the deceased. On September 1, 1962, the deceased designated Cora Martin Watson, then his wife, as beneficiary. The policy provided that if "the employee [deceased] fails to designate a beneficiary * * * payment of such insurance shall be made to the employee's surviving spouse * * *."

The deceased and Cora Watson had been married on October 29, 1955. Their son, Craig Martin, was born during 1956. On March 15, 1963, the parties entered into a property settlement agreement. It provided that the deceased should maintain the life insurance "in full force and effect * * * and Craig Martin, the minor child of the parties hereto shall continue to be the beneficiary of said policy from the minority of said minor child."

On April 1, 1963, a judgment for dissolution of the marriage of deceased and Cora Watson was entered. The judgment contained a provision substantially the same as the property settlement agreement concerning the insurance. The judgment required the deceased to "cause Craig Martin, the minor child of the parties hereto, to be named as the beneficiary of said insurance policy for and during the minority of the said Craig Martin, a minor * * *."

The judgment approved the property settlement agreement and also contained the usual language whereby each party was "barred and foreclosed" from "any and all claims * * * in and to the property of the other now owned, or hereafter acquired by either of them."

The deceased never made any change in the beneficiary designation. About one year after the divorce, the deceased married Ruth V. Martin. Two children were born to them. The deceased died on November 6, 1976.

Ruth V. Martin, the surviving widow, contends that although Cora Martin Watson was named as the beneficiary under the policy, she had waived all interest in the insurance proceeds by virtue of the property settlement with the deceased. Ruth V. Martin also contends the decedent's failure to make Craig Martin the named beneficiary resulted in a failure to designate a beneficiary; and, since Craig Martin is an adult, the

policy provisions require that Ruth V. Martin, as surviving widow, receive the policy proceeds.

■■ In our opinion, the resolution of the rights of the parties necessarily rests upon the ancient maxim of the courts of chancery that "equity regards as done that which ought to be done." (See *In re Estate of Krotzsch* (1975), 60 Ill. 2d 342, 346, 326 N.E.2d 758, quoting from *Shay v. Penrose* (1962), 25 Ill. 2d 447, 449, 185 N.E.2d 218.) In the case before us the property settlement agreement and the judgment for dissolution of the marriage required the deceased to make a change in the stated beneficiary of the insurance policy to provide that the beneficiary should be Craig Martin, the son of the deceased. The record does not indicate if the deceased made any attempt to comply with the requirements of these documents or if the divorced first wife, Cora Watson, ever attempted to compel this action. However, we will follow the maxim as stated and we will determine the rights of these parties commencing with the assumption that Craig Martin, son of the deceased, had been made beneficiary of the policy.

The next question is whether the death of the deceased occurred during the minority of his son Craig Martin. As above shown, both the property settlement and the judgment required only that Craig Martin remain the beneficiary of the insurance policy during his minority. We find a complete exposition of the problem of the application of the statutory definition of majority in *Venegas v. Venegas* (1977), 46 Ill. App. 3d 998, 1000-01, 361 N.E.2d 658. In that case in construing the provisions of a judgment for dissolution of marriage in connection with application of the statute governing majority, this court cited the previous decision of *Waldron v. Waldron* (1973), 13 Ill. App. 3d 964, 301 N.E.2d 167:

"The status of minors entitled to support, however, is determinable and fixed at the time the decree is rendered, and their rights are defined by the terms of the decree. (*Strum* [22 Ill. App. 3d 147, 317 N.E.2d 59].) Should the description of those entitled to support be ambiguous, the statutes in effect at the time of the rendition of the decree must be examined to arrive at the intention of the court, and where, as here, the court described the supportable group as 'minor children,' the statutory age of majority then in effect must be construed as the description intended by the court. (*Waldron.*) Consequently, *Waldron* is dispositive of the issue.

Here, the trial court employed the statutory definition of majority which became effective subsequent to the entry of the divorce decree (Ill. Rev. Stat. 1973, ch. 3, par. 131) in arriving at its conclusion that a male child ceases to be a minor at age 18. The statute in effect on the date of the entry of the decree, however, provided that males attained majority at age 21. (Ill. Rev. Stat.

1961, ch. 3, par. 131.) Thus, the trial court's determination that Daniel, upon reaching 18 years of age on June 14, 1973, was no longer entitled to support under the terms of the divorce decree was erroneous."

■■ Following these decisions, we conclude that the issue of when Craig Martin arrived at majority must be determined in accordance with the statutes of Illinois as they existed during 1963 at the time of the execution of the property settlement agreement and the entry of the judgment for dissolution of marriage. At that time, the pertinent statute provided that males attained their majority at the age of 21. (Ill. Rev. Stat. 1961, ch. 3, par. 131.) It is correct as Ruth V. Martin, widow of the deceased, contends here, that subsequent changes in the statutes have reduced the age of majority to 18 years. (Ill. Rev. Stat. 1977, ch. 110½, par. 11—1.) However, in our opinion, the rights of the parties in and to the property settlement agreement and the judgment for dissolution of marriage must be considered as of the time of the execution of these documents.

■ As regards the contract between the deceased and his first wife fixing their property rights, the statute governing minority as it existed when the contract was executed, became a part of the agreement and should be construed as fully applicable thereto. (*Board of Regents v. Wilson* (1975), 27 Ill. App. 3d 26, 31-32, 326 N.E.2d 216, *appeal denied* (1975), 60 Ill. 2d 595, and cases there cited.) In addition, it is a universally applied rule of statutory construction that "[l]egislative enactments are, in the absence of express language which provides otherwise, construed as prospective and not retrospective." *In re Estate of Krotzsch* (1975), 60 Ill. 2d 342, 345, and cases there cited.

For these reasons we do not find *Sarchet v. Soots* (1973), 10 Ill. App. 3d 926, 295 N.E.2d 245, cited by Ruth V. Martin, widow of the deceased, a convincing authority to the contrary. The fact that *Venegas* and *Waldron* involved child support does not effectively distinguish them as binding authority in the instant case. The principle applied in those decisions should be applied in the case before us; namely, that contracts and judgments should be construed and applied in accordance with the statutory law when they came into effect and subsequent statutes should not be given a modifying retroactive construction.

We find it clear from this record that Craig Martin was a minor at the time of his father's death. The record shows only that Craig Martin was born during 1956. The deceased died on September 6, 1976. Consequently, Craig Martin, was necessarily under 21 years of age at the time of the father's death. In our opinion, it follows that the proceeds of insurance deposited in accordance with the interpleader action were properly awarded by the trial court to Craig Martin, son of the deceased. We find that the assignment to Craig Martin by his mother, Cora Martin

904

Watson, of all of her rights in the insurance proceeds has no effect upon the result reached because, in our opinion, Mrs. Watson had no viable right to these funds. The order appealed from is affirmed.

Order affirmed.

McGLOON and CAMPBELL, JJ., concur.