RICHARD E. FOSTER *vs.* MICHAEL J. HURLEY & another.[1]

No. 02-P-171.

Middlesex. October 16, 2003. - June 30, 2004.

Present: LENK, SMITH, & KAFKER, JJ.

Further appellate review granted, 442 Mass. 1112 (2004).

*Divorce and Separation,* Separation agreement, Agreement respecting life insurance. *Insurance,* Life insurance: change of beneficiary. *Contract,* Insurance, Unjust enrichment. *Trust,* Constructive trust.

Discussion of decisions by courts in other States concerning promises made in separation agreements to maintain an insurance policy designating a spouse as a beneficiary. [417-418]

In a civil action for the proceeds of two life insurance policies issued to the plaintiff's former wife, who was now deceased, a Superior Court judge properly allowed the plaintiff's motion for partial summary judgment with respect to equitable substitution of the plaintiff's name for that of his former wife's new husband as beneficiary on an insurance policy held by the former wife at the time she entered into a separation agreement with the plaintiff, where the separation agreement's failure specifically to identify or otherwise refer to the policy at issue did not override language in the agreement promising that the wife would hold a set amount of life insurance in favor of the plaintiff [418-421]; for the same reason, the plaintiff was entitled to the proceeds from another insurance policy issued to the plaintiff's former wife, regardless of the fact that the policy was acquired after the signing of the separation agreement [421-422]; accordingly, this court ordered the imposition of a constructive trust in the plaintiff's favor on both policies [422].

CIVIL ACTION commenced in the Superior Court Department on March 26, 2001.

Motions for partial summary judgment and for judgment on the pleadings were heard by *Peter M. Lauriat, J.*

*Wendy H. Sibbison* for Michael J. Hurley.

*David M. Hass* for the plaintiff.

---

[1]The complaint also was brought against James G. Nelligan, as special administrator of the estate of Janice Hunter. Pursuant to G. L. c. 193, § 15, the action against Nelligan was stayed.

SMITH, J. The plaintiff, Richard Foster, brought an action in the Superior Court seeking the proceeds of two insurance policies owned by his former wife, Janice Hunter (decedent), which designated the decedent's new husband, Michael J. Hurley, as beneficiary.[2] Foster alleged that the policies' proceeds should have been awarded to him under the terms of a separation agreement incorporated into his and the decedent's final divorce decree. Foster sought injunctive relief in the form of equitable substitution of the beneficiary. He also claimed that Hurley was unjustly enriched when he collected the policies' proceeds that should have gone to Foster.

In his answer, Hurley claimed that Foster had not submitted sufficient evidence to support the elements of an unjust enrichment claim. Hurley also argued in regard to Foster's request for equitable substitution that, under the separation agreement, the decedent was free to designate the beneficiary of her choice on the specific policies in question. Hurley also claimed that any relief to which Foster may be entitled was limited by the terms of the separation agreement to a creditor's claim against the decedent's estate.

Upon application by Foster, a Superior Court judge entered a temporary restraining order, ordering Hurley to pay the insurance proceeds he received, up to $200,000, to the special administrator, to be held in escrow. When that order expired, Foster was denied further injunctive relief. The administrator then distributed the proceeds of the two policies to Hurley on April 9, 2001.

Foster moved for partial summary judgment on his theory of equitable substitution, and Hurley moved for judgment on the pleadings. A Superior Court judge, after a hearing, allowed Foster's motion with respect to the UNUM policy and awarded Foster the $168,000 in proceeds under that policy insofar as Foster was acting for the benefit of the children. The judge also allowed Hurley's motion as it concerned the $31,338.19 Prudential policy and awarded Hurley those proceeds. On cross appeal, both parties claim error by the motion judge, and each party asserts his entitlement to the proceeds of both policies.

---

[2] The two insurance policies in question are policies issued by UNUM Provident (UNUM) and Prudential Insurance Company (Prudential).

*Facts.* We recite the undisputed facts taken from the parties' cross motions. Foster and the decedent were married on May 2, 1981. They had two children during the marriage: Jillian Ann Hunter Foster (born August 5, 1982) and Evan Douglas Hunter Foster (born June 20, 1985). Foster and the decedent decided to end their marriage in 1995, and they executed a separation agreement prior to their final divorce decree. The separation agreement, incorporated into the final divorce decree, survived as a contract of independent legal significance. The provision of the agreement at issue, section 12, states in relevant part:

> "12. *Life Insurance.* . . . [U]ntil the children are emancipated as defined in this Agreement, the Wife shall maintain and keep in effect one or more life insurance policies on her life totaling no less than $200,000 naming the Husband as primary beneficiary."

There was a reciprocal obligation on the part of Foster. The life insurance policies on his life, however, needed to total no less than $240,000.

In 1995, when the separation agreement was executed, the decedent had a group life insurance policy with UNUM through her employment with Children's Hospital, and Foster was the named beneficiary on the UNUM policy.[3] In that year, the death benefit appeared to have been approximately $103,473.24. On October 3, 1998, the decedent married Hurley. At some point after the marriage, the decedent named Hurley as the beneficiary of her UNUM policy. In June of 2000, the decedent obtained a group life insurance policy from Prudential, designating Hurley as beneficiary. At that time, the death benefit on the Prudential policy was approximately $31,151.68.

The decedent died on August 31, 2000, at which time her two children were unemancipated (as defined by the separation agreement). At the time the decedent died, she did not have any life insurance policies naming Foster as beneficiary. Hurley applied for the insurance proceeds from both policies and received

---

[3]Although the motion judge found this fact to be true, Foster's status as beneficiary at the time of the agreement is disputed by Hurley. Whether this fact is true does not change our analysis because it is undisputed that the UNUM policy did exist at the time that the separation agreement was signed and the divorce decree entered.

approximately $168,000 from the UNUM policy and approximately $31,000 from the Prudential policy. The precise value of the decedent's estate is in dispute, although it may be between $10,000 and $17,000.

*Analysis.* Lacking controlling Massachusetts precedent, we begin our analysis of the cross appeals by examining decisions in other jurisdictions that have addressed the issue raised in this matter. Those decisions, we note, are grounded on principles of restitution and unjust enrichment.

"[A] promise in a separation agreement to maintain an insurance policy designating a spouse as beneficiary vests in the spouse an equitable interest in the policy specified, and that spouse will prevail over a person in whose favor the decedent executed a gratuitous change in beneficiary." *National Benefit Life Ins. Co.* v. *Kelly,* 160 A.D.2d 570, 570-571 (N.Y. 1990), quoting from *Rogers* v. *Rogers,* 63 N.Y.2d 582, 586-587 (1984). See *Brunnenmeyer* v. *Massachusetts Mut. Life Ins. Co.,* 66 Ill. App. 3d 315, 318 (1978); *Lincoln Natl. Life Ins. Co.* v. *Watson,* 71 Ill. App. 3d 900, 902 (1979); *Appelman* v. *Appelman,* 87 Ill. App. 3d 749, 753 (1980); *In re Schwass,* 126 Ill. App. 3d 512, 514 (1984); *IDS Life Ins. Co.* v. *Sellards,* 173 Ill. App. 3d 174, 177 (1988); *Perkins* v. *Stuemke,* 223 Ill. App. 3d 839, 842 (1992); *Hirsch* v. *Travelers Ins. Co.,* 134 N.J. Super. 466, 470-471 (1975); *Simonds* v. *Simonds,* 45 N.Y.2d 233, 239 (1978); *Markwica* v. *Davis,* 64 N.Y.2d 38, 40 (1984); *In re Estate of Tanenblatt,* 160 Misc. 2d 490, 492 (N.Y. Sur. Ct. 1994); *Torchia* v. *Torchia,* 346 Pa. Super. 229, 233 (1985).

It has been held that if sufficient consideration supports the insured's promise to make the claimant the beneficiary or not to change the designation so as to deprive the named beneficiary of his interest therein, the claimant takes a vested interest in the proceeds.[4] See, e.g., *Hunter* v. *Hunter,* 41 Conn. Supp. 289, 292 (1989); *Brunnenmeyer* v. *Massachusetts Mut. Life Ins. Co.,* 66 Ill. App. 3d at 318; *Simonds* v. *Simonds,* 45 N.Y.2d at 239-240; *Hundertmark* v. *Hundertmark,* 372 Pa. 138, 142 (1952); 2

---

[4]"[A] substitution of policies, or even substitution of insurance companies, does not defeat the equitable interest of one who has given sufficient consideration for a promise to be maintained as beneficiary under an insurance policy." *Simonds* v. *Simonds,* 45 N.Y.2d at 239.

Appleman, Insurance Law and Practice § 922 (1966) (hereinafter "Appleman"). This is true regardless of the fact that the policy gives the insured the right to change the designation. See *Hunter* v. *Hunter*, 41 Conn. Supp. at 293; *Simonds* v. *Simonds*, 45 N.Y.2d at 239; Appleman, *supra.*

It has been stated that a settlement of property rights arising from a contemplated divorce is satisfactory consideration for the acquisition of such a vested interest in a policy designation. See *Hunter* v. *Hunter*, 41 Conn. Supp. at 292, quoting from *Kulmacz* v. *New York Life Ins. Co.*, 39 Conn. Supp. 470, 475 (1983); *Brunnenmeyer* v. *Massachusetts Mut. Life Ins. Co.*, 66 Ill. App. 3d at 318; *Appelman* v. *Appelman*, 87 Ill. App. 3d at 754-755; *Perkins* v. *Stuemke*, 223 Ill. App. 3d at 844-845; *Hundertmark* v. *Hundertmark*, 372 Pa. at 142. See also Appleman, *supra.* Massachusetts law appears to agree in principle. See *Green* v. *Green*, 13 Mass. App. Ct. 340, 342-343 (1982) ("cases are legion in which wives or children who were removed as beneficiaries of life insurance policies in violation of the terms of separation agreements or divorce judgments have been permitted to recover the proceeds of such policies . . . from the improperly substituted beneficiaries. . . . The beneficiary . . . has a vested equitable interest").

The principles guiding our discussion were found to be applicable even where the required designation as beneficiary had never been effected. See *Lincoln Natl. Life Ins. Co.* v. *Watson*, 71 Ill. App. 3d at 902. Thus, courts have also recognized an equitable interest in the proceeds of after-acquired insurance policies. See *Appelman* v. *Appelman*, 87 Ill. App. 3d at 754-755 (constructive trust proper for policy which differed from that named in marital settlement agreement); *In re Schwass*, 126 Ill. App. 3d at 516 (court imposed constructive trust on proceeds of replacement policy); *Perkins* v. *Stuemke*, 223 Ill. App. 3d at 843-844 (constructive trust proper even though policy at issue differed from that named in divorce decree); *Simonds* v. *Simonds*, 45 N.Y.2d at 240 (constructive trust proper on insurance proceeds from after-acquired policies).

A. *The UNUM Policy*

While agreeing with the general principles above, Hurley argues on appeal that the motion judge committed error as to

the proceeds of the UNUM policy because there was no language in the separation agreement that prohibited the decedent from changing beneficiaries to her insurance policies. Therefore, he argues, *Gleed* v. *Noon*, 415 Mass. 498 (1993), applies and he is entitled to the proceeds of both the UNUM and Prudential policies.

In *Gleed*, while a divorce action was pending, a Probate Court judge issued a temporary order prohibiting both parties from transferring or otherwise disposing of their marital assets while their divorce action was pending. *Id.* at 499. The husband changed the beneficiary of his insurance policies from his wife to his daughter. *Ibid.* The Supreme Judicial Court ruled that the husband did not violate the temporary restraining order because there was no specific order preventing or prohibiting the beneficiary change. *Id.* at 500.

We agree with Hurley that there was no specific order in the separation agreement requiring the decedent not to change the beneficiary on any of her insurance policies. However, the order in *Gleed* was a temporary order issued prior to the underlying issues being litigated. Such orders, issued prior to trial, must be specific and unambiguous to maintain the status quo before the case is actively litigated. In contrast, a court order, such as the one under scrutiny here, is necessarily less restrictive because circumstances may arise where a party may no longer be able to maintain a specific policy or secure a different policy at a lower price. Therefore, *Gleed* does not control here.

Foster claims that *Green* v. *Green*, *supra*, controls the disbursement of the UNUM policy proceeds. In *Green*, the husband and the wife, in connection with divorce proceedings, entered into a stipulation, which was merged in the divorce judgment, by which the husband agreed to maintain their children as beneficiaries under certain life insurance policies. *Green* v. *Green*, 13 Mass. App. Ct. at 340. The husband remarried and substituted his second wife as beneficiary on his life insurance policies. *Id.* at 340-341. The husband later died and the children brought an action against the second wife. *Id.* at 341.

This court ruled that "[b]y reason of the power typically reserved by the terms of the policy to the insured to change

beneficiaries, the insured has the right as against the insurer to change beneficiaries; but by virtue of a separation agreement or divorce judgment which provides that the insured shall not exercise that power, he has no such right as between himself and the parties to the agreement or judgment." *Id.* at 342-343. Therefore, we held, the children were entitled to recover the proceeds of the policies from the second wife without first exhausting their remedies against the husband's estate. *Id.* at 343-344.

Hurley argues, however, that *Green* does not control because, in that decision, the separation agreement referred to "certain insurance policies," whereas the separation agreement under scrutiny here does not refer specifically to the UNUM policy and did not require Foster to be named as beneficiary of any specified policies. Therefore, the UNUM policy, according to Hurley, became the decedent's exclusive property, to which Foster released all claims under another section of the separation agreement.

We agree that section 12 of the separation agreement does not specifically refer to the UNUM policy or otherwise identify it. Furthermore, we recognize that Massachusetts decisions that are concerned with similar issues refer to existing policies, or otherwise identify them.[5] We do not, however, interpret those decisions as holding that, unless the separation agreement refers to or otherwise identifies the specific insurance policies, a provision in the agreement requiring a party to maintain insurance with the other as beneficiary is unenforceable.

There is no question that the separation agreement in this matter was poorly drafted.[6] But the subject language is sufficiently clear and unambiguous as to make this much plain: the decedent promised to maintain and keep in effect $200,000 of life insurance policies on her life, naming Foster as primary beneficiary. That language imposed an obligation on the

---

[5]See *Massachusetts Linotyping Corp.* v. *Fielding*, 312 Mass. 147, 148 (1942); *Handrahan* v. *Moore*, 332 Mass. 300, 301 (1955); *Green* v. *Green, supra*; *Hurlbut* v. *Hurlbut*, 40 Mass. App. Ct. 521, 525-526 (1996).

[6]We hasten to add that appellate counsel for both parties played no part in the drafting of the agreement. See 2A Kindregan & Inker, Family Law & Practice § 51.64 (3d ed. 2002), for a model clause.

decedent that we hold, in these circumstances, she could not ignore because of the separation agreement's failure specifically to identify or otherwise refer to the UNUM policy.[7]

B. *The Prudential Policy*

The motion judge awarded the proceeds of the Prudential policy to Hurley because he interpreted *Green* v. *Green*, 13 Mass. App. Ct. at 342-343, to apply only to those policies that were in existence at the time that the separation agreement was signed. Therefore, because the Prudential policy was acquired after that event, the judge reasoned, Hurley was entitled to the proceeds of that policy.

We do not read the *Green* decision as being so restrictive. As we have noted earlier, other jurisdictions, notably Illinois and New York, have imposed a constructive trust on insurance proceeds from after-acquired policies. By removing Foster as beneficiary of the policy in existence at the time the agreement was made, *as well as* by failing to name Foster as beneficiary on an after-acquired policy that would nearly have completed her $200,000 obligation, the decedent violated the separation agreement. Hurley, having furnished no consideration for the receipt of the proceeds of the life insurance policies, has received a gratuitous benefit and would be unjustly enriched in the eyes of the law were he to retain those proceeds against the claims of Foster. But this is not to suggest that Hurley acted improperly: unjust enrichment is not necessarily "unlawful" or "wrongful" enrichment. See, e.g., *Lengel* v. *Lengel*, 86 Misc. 2d 460, 465 (N.Y. Sup. Ct. 1976); *Torchia* v. *Torchia*, 346 Pa.

---

[7]Hurley argues that, under a provision in the separation agreement, Foster was restricted to bringing a creditor's claim against the decedent's estate.

The provision in question states as follows:

"If the policy or policies are not in full force and effect at the time of a party's death, then notwithstanding anything to the contrary contained in this Agreement, the surviving party shall have a creditor's claim against the deceased's estate for the difference between the face amount of the policy or policies required to be maintained under this Agreement and the amount actually paid under the deceased's policy."

We read the provision to encompass and be limited to those situations where, at the time of a party's death, no policy or policies were in full force and effect. Here, there is no question that at the time of the decedent's death both the UNUM and Prudential policies were in full force and effect.

Super. at 233. The fact that Hurley is not at fault, or had no knowledge of the policies or change in beneficiary, will not defeat the vested rights of Foster.

The appropriate remedy here, equitable in origin, which we now order is the imposition of a constructive trust in Foster's favor on both policies.[8]

C. *Conclusion.* We find no error in the allowance of Foster's motion for partial summary judgment with respect to equitable substitution of Foster on the UNUM life insurance policy, but conclude that the denial of Foster's claims as to the Prudential policy was improper. We also find erroneous the allowance of Hurley's motion for judgment on the pleadings with respect to Foster's claims for unjust enrichment and equitable substitution with respect to the Prudential policy.

Accordingly, for the sake of administrative convenience, we reverse both judgments entered in the trial court. A new judgment shall issue providing that Hurley, as constructive trustee of the benefits of the Prudential and UNUM policies, shall convey those benefits to Foster, together with such interest accrued thereon as the trial judge shall, in his discretion, deem just. The order entered December 21, 2001, allowing Hurley's motion to amend his notice of appeal also is affirmed.

*So ordered.*

---

[8]We also reject, as did the motion judge, Hurley's claim that Foster is disqualified from maintaining the action because of his own violations of the agreement. Hurley points to three separate contempt charges that the decedent brought against Foster. However, there were no findings of contempt made against Foster. Therefore, Foster may bring this action. See *Broome* v. *Broome,* 43 Mass. App. Ct. 539, 546-547 (1997).

We also reject Hurley's claim that summary judgment could not be allowed because there were present genuine issues of material fact. See *ibid.*